UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:12-CV-00036-JHM

CHARLES McCRANEY                                                                 PLAINTIFF

V.

ANGIE PLEASANT, LILA CAVANAH,
JODI BLAKE, and CHARLES TOWNSEND, M.D.                       DEFENDANTS

<u>**MEMORANDUM OPINION AND ORDER**</u>

This matter is before the Court on Defendants' Motion for Summary Judgment [DN 42]. Fully briefed, it is ripe for decision. For the following reasons, Defendants' motion is **GRANTED**.

**I. BACKGROUND**

Plaintiff is an insulin-dependent brittle diabetic whose blood sugar levels often fluctuate. On July 6, 2011, he became an inmate at the Hopkins County Jail. The jail's medical staff soon began a regimen of finger-stick blood sugar ("FSBS") checks on Plaintiff at least twice daily. They also provided him insulin twice daily due to his diabetes. Beginning December 20, 2011, Plaintiff was placed in medical isolation due to fluctuating blood sugar readings. Defendant Charles Townsend, a doctor, ordered that Plaintiff stay in medical isolation for thirty days without edible commissary. Plaintiff was initially lodged in a "seg pod," which is a pod containing six single cells. Later, he was put in a single observation cell, which Plaintiff refers to as the "hole."[1] During his medical isolation, FSBS checks and the administration of insulin continued. (<u>See</u> Blood Sugar Log Sheet [DN 42-2].)

Medical records reveal that while Plaintiff was in medical isolation, he was seen by the jail's medical staff several times for issues related to his diabetes. For example, on December 21, 2011,

---

[1] According to Defendants, Plaintiff's placement in the single cell occurred after the jail and medical staff began suspecting that Plaintiff was obtaining food from other inmates. (Aff. of Jodi Blake [DN 42-6] ¶ 7.) Plaintiff denies that he was obtaining such food. (Charles McCraney Dep. [DN 43-3] 67.)

Defendant Lila Cavanah, a nurse, examined Plaintiff after he began complaining of high blood sugar and vomiting. Cavanah believed that Plaintiff may have a gastrointestinal virus and recommended that he increase his water intake. (Sick Call Request Form & Med. Progress Note Dated Dec. 21, 2011 [DN 42-8].) The next day, on December 22, 2011, Cavanah examined Plaintiff for complaints of increasing blood sugar. After the examination, she administered four units of "R" insulin to lower it. She also advised Plaintiff to slow down his breathing and increase his water consumption. (Sick Call Request Form & Med. Progress Note Dated Dec. 22, 2011 [DN 42-9].) Later that evening, Cavanah again examined Plaintiff for complaints of nausea and other bodily pain. She administered six additional units of "R" insulin. She also advised Plaintiff to slow down his breathing, increase his activity and water consumption, and decrease the intake of foods that he was not supposed to eat. (Sick Call Request Form & Med. Progress Note Dated Dec. 22, 2011 [DN 42-10].)

On March 8, 2012, Plaintiff filed this suit against nurses Angie Pleasant, Lila Cavanah, Jodi Blake, and "Michael." Plaintiff also sued Dr. Charles Townsend in a separate action. These actions were consolidated. All of Plaintiff's claims arise from allegations of denial of treatment (or improper treatment) for his diabetic condition while he was in the Hopkins County Jail. Specifically, Plaintiff asserts that despite being charged for treatment, "never once did the Doctor or Nurses help." He then asks: "If they was trying to help me, why didn't they draw blood or change insulin or give me some pills to help bring it down . . . ." (Compl. [DN 1] 5.) Plaintiff also asserts that often, he would request additional blood sugar checks when he felt like his blood sugar was high, but the nurses refused to check his sugar. (Charles McCraney Dep. [DN 43-2] 46–47.) On June 6, 2012, the Court entered a Memorandum Opinion dismissing Michael as a defendant and limiting Plaintiff's claims against Pleasant, Cavanah, Blake, and Townsend to those "relating to not receiving medical attention for his diabetes while in the 'hole'. . . ." (Mem. Op. [DN 9] 7.) On January 9, 2013, Defendants filed

2

a summary judgment motion. Plaintiff did not respond. The Court now considers the motion.

## II. STANDARD OF REVIEW

Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Instead, the Federal Rules of Civil Procedure require the non-moving party to present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252.

## III. DISCUSSION

In their summary judgment motion, Defendants argue that Plaintiff was properly treated for his medical needs not only while he was in medical isolation, but also during his entire incarceration at the Hopkins County Jail. According to Defendants, the Court should grant summary judgment in their favor because they were not deliberately indifferent to Plaintiff's diabetic condition and

because Plaintiff's constitutional rights were not violated. For the following reasons, the Court agrees.

The Eighth Amendment to the U.S. Constitution protects prisoners from cruel and unusual punishment, including the denial of medical care and the receipt of inadequate medical care. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). The objective component requires that the medical need be "sufficiently serious." Id. (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). This component is contextually driven and responds to "contemporary standards of decency." Hudson v. McMillian, 503 U.S. 1, 8 (1992). The subjective component requires that the defendant's conduct be deliberately indifferent to the plaintiff's needs. Farmer, 511 U.S. at 834. As the Sixth Circuit has noted, deliberate indifference is "characterized by obduracy or wantonness—it cannot be predicated on negligence, inadvertence, or good faith error." Reilly v. Vadlamudi, 680 F.3d 617, 624 (6th Cir. 2012). Thus, to claim an Eighth Amendment violation based on inadequate medical care, a prisoner must demonstrate that the defendant acted or failed to act with "deliberate indifference to serious medical needs." Farmer, 511 U.S. at 835 (quoting Estelle, 429 U.S. at 104).

In the present case, Defendants concede that Plaintiff's diabetic condition is a "sufficiently serious" medical need, as required for the first step of the constitutional analysis. (See Defs.' Mem. of Law in Support of Mot. for Summ. J. [DN 42-1] 7.) But Defendants argue that summary judgment is nonetheless proper since Plaintiff cannot meet the test's subjective component. The Court agrees.

It has long been held that not every claim of inadequate medical treatment establishes an Eighth Amendment violation. Estelle, 429 U.S. at 105. Notably, a difference of opinion between the inmate and the prison's medical officials concerning treatment does not constitute a constitutional violation. Id. at 107–08. Courts distinguish between cases in which there is a complete denial of

4

medical care and those where the claim is one of inadequate medical care. See Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." Id.

Here, the crux of Plaintiff's complaint appears to be a disagreement as to the adequacy of the treatment received. For example, in his deposition, Plaintiff testified that while he was given insulin twice each day, (Charles McCraney Dep. [DN 43-3] 53), he should have been given Lantus insulin instead of 70/30 insulin, as his body was immune to the latter. (Id. at 62–63, 66.) Further, Plaintiff testified that while his blood sugar was taken at least twice each day, (id. [DN 43-2] at 42, 48), the nurses often refused to check his blood sugar when he requested additional checks. (Id. at 46–47.) These claims are essentially complaints regarding the type and amount of treatment given. Plaintiff's Pretrial Memorandum confirms that his claims relate to the adequacy of the given treatment. In that memorandum, Plaintiff states that "no medical treatment was giving to me, like blood work to see what they problem is, why my sugar level was staying so high. A change of insulin that might of could help, they have sugar pills, to, too help reduce a diabetics sugar level, none of the above was done to help me . . . ." (Pretrial Mem. [DN 38] 3.) The Court thus concludes that the gravamen of Plaintiff's complaint evidences a disagreement with the type and amount of treatment given.

Since Plaintiff's claims evidence a disagreement with the type and amount of treatment given, the Court finds that they do not rise to the level of constitutional claims. See Estelle, 429 U.S. at 107–08. Other courts have reached similar conclusions as to with diabetic inmates. See, e.g., Ward v. Smith, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996) (noting that "where the plaintiff has been treated for diabetes but disagrees with the efficacy of the treatment, he has, at best, alleged a claim

for medical negligence"); Schulker v. Kenton Cnty., Ky., 2013 WL 190210, at *4 (E.D. Ky. Jan. 17, 2013) (holding that the plaintiff's complaints as to his diabetic treatment "amount to nothing more than a disagreement with the course of treatment he received at the detention center, which is not actionable"); Wagle v. Skutt, 2012 WL 5363534, at *4 (E.D. Mich. Oct. 11, 2012) (finding that the plaintiff "was provided with regular and appropriate medical care and treatment for his diabetes" when the medical records showed that he reported twice daily for blood sugar checks and corrective action was given when his blood sugar level was not within normal limits); Cooper v. Miller, 2008 WL 4833085, at *3, 5 (D.S.C. Oct. 31, 2008) (granting the defendants' summary judgment motion despite the inmate's claims that he was not given insulin every day because the "amount of medical care is discretionary" and because the Constitution "does not guarantee to a prisoner the treatment of his choice"). The Court will thus grant Defendants' summary judgment motion.

Moreover, even if the Court were to conclude that Plaintiff's claim was intended to be one of a denial of medical care, as opposed to one of inadequate medical care, it would still grant Defendants' summary judgment motion. The medical records make it clear that Plaintiff's blood sugar was taken at least twice per day and that Plaintiff was given insulin at least twice per day. Plaintiff admits as much. Moreover, the records show that Plaintiff was given "R" insulin when his blood sugar rose, and Plaintiff admits that it is reasonable to give diabetics "R" insulin to quickly lower their blood sugar levels. (Charles McCraney Dep. [DN 43-4] 81.) Plaintiff also testified that after low blood sugar readings, he was given glucose, juice, and supplements to help raise his blood sugar–and that this was reasonable treatment. (Id. [DN 43-3] at 57–58.) In addition, the records show that Cavanah counseled Plaintiff on techniques to assist in keeping his blood sugar down–including increasing his fluid intake, controlling his breathing, and increasing his activity. In short, Plaintiff has pointed to no evidence suggesting that Defendants were deliberately indifferent to his diabetic

6

condition and a trier of fact could not conclude that Defendants' response to Plaintiff's diabetes was unreasonable, let alone that it was intentionally or recklessly calculated to cause him harm. Absent any evidence of this sort, Plaintiff has not raised a genuine issue of material fact on the issue of deliberate indifference sufficient to withstand Defendants' motion for summary judgment. See Hendricks v. Ohio Dep't of Rehab. & Corr., 2013 WL 765601, at *12 (S.D. Ohio Feb. 28, 2013).

The Court's conclusion is supported by Sixth Circuit precedent, as that Court has rejected contentions of deliberate indifference under conditions much more severe than Plaintiff alleges. See, e.g., Napier v. Madison Cnty., Ky., 238 F.3d 739 (6th Cir. 2001) (rejecting a plaintiff's claims of deliberate indifference when the plaintiff, who suffered from complete kidney failure, was kept from scheduled dialysis treatment throughout the period of incarceration); Brooks v. Celeste, 39 F.3d 125 (6th Cir. 1994) (rejecting a plaintiff's claims of deliberate indifference despite his assertions that the physicians failed to conduct proper physical examinations, failed to prescribe necessary medications, and cancelled prescriptions made by other doctors without consulting the doctors or examining him). Accordingly, the Court finds that Plaintiff has failed to produce evidence to support any theory of liability against Defendants. Defendants are entitled to judgment in their favor as a matter of law.

## IV. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [DN 42] is **GRANTED**.

*Joseph H. McKinley*

**Joseph H. McKinley, Jr., Chief Judge**
**United States District Court**

March 13, 2013

cc:  counsel of record
     Charles McCraney, *pro se*